**JOHNSON FISTEL, PLLP**
Frank J. Johnson (SBN 174882)
FrankJ@johnsonfistel.com
Kristen O'Connor (SBN 305113)
KristenO@johnsonfistel.com
501 West Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 363-8326

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ABDULRAHMAN ALYAHYA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BLAIZE HOLDINGS, INC., DINAKAR MUNAGALA, HARMINDER SEHMI, EDWARD FRANK, LANE BESS, JUERGEN HAMBRECHT, TONY CANNESTRA, GEORGE DE URIOSTE, YOSHIAKI FUJIMORI, NORTHLAND SECURITIES, INC., and THE BENCHMARK COMPANY, LLC,<br><br>Defendants. | Case No.: 2:26-cv-10609<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Abdulrahman Alyahya ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, among other things, his counsel's investigation, which includes, without limitation: (a) review and analysis of public filings made by Blaize Holdings, Inc. ("Blaize" or the "Company") with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants (defined below) and other parties; (c) review of news articles, shareholder communications, conference calls, and postings on Blaize's website concerning the Company's public statements; and (d) review of other publicly available information concerning Defendants.

## NATURE OF THE ACTION

1. This federal securities class action asserts both fraud-based claims under the Securities Exchange Act of 1934 (the "Exchange Act") and non-fraud claims under the Securities Act of 1933 (the "Securities Act") based on strict liability and negligence. This action is brought on behalf of Classes consisting of:

a. All persons and entities that purchased or otherwise acquired Blaize common stock between July 17, 2025 and August 13, 2026, inclusive (the "Class Period"), except those excluded below, against Blaize and the Exchange Act Individual Defendants (defined below) for violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder (the "Exchange Act Class"); and

b. All persons and entities that purchased or otherwise acquired Blaize common stock pursuant or traceable to the Offering Materials (defined below) issued in connection with Blaize's May 2026 public offering (the "Offering"), except those excluded below, against the Securities Act Defendants (defined below) for violations of Sections 11, 12(a)(2), and

15 of the Securities Act (the "Securities Act Class" and, together with the Exchange Act Class, the "Classes").

2. Under Sections 11, 12(a)(2), and 15 of the Securities Act, the Securities Act Defendants are liable for materially false and misleading statements contained in the Offering Materials. Separately, with respect to the Securities Act claims, Plaintiff expressly disclaims the allegations set forth below in the Exchange Act claims. For these claims, Plaintiff pleads in the alternative that the Securities Act Defendants violated the Securities Act through materially false and misleading statements and omissions in the Offering Materials.

## JURISDICTION AND VENUE

3. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5), and Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2), and 77o).

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Exchange Act (15 U.S.C. § 78aa), and Section 22 of the Securities Act (15 U.S.C. § 77v).

5. Personal jurisdiction and venue are proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa(a)), Section 22 of the Securities Act (15 U.S.C. § 77v(a)), and 28 U.S.C. § 1391(b). Many of the acts and omissions charged herein, including the dissemination of materially inaccurate, false, and misleading information to the investing public and the omission of material information, occurred in this Judicial District.

6. In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

7. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Blaize common stock during the Class Period, including shares purchased pursuant or traceable to the Offering, and suffered damages as a result of the violations of the federal securities laws and false and/or misleading statements and/or material omissions alleged herein.

8. Defendant Blaize is incorporated under the laws of Delaware, with its principal executive offices located in El Dorado Hills, California. Blaize's common stock trades on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "BZAI." Blaize was the registrant and issuer of the 18,918,918 shares of common stock sold in the Offering.

9. Defendant Dinakar Munagala ("Munagala") is the Co-Founder of Blaize and has served as the Company's Chief Executive Officer at all relevant times. Defendant Munagala signed the registration statement filed on Form S-3 on January 27, 2026 (the "Registration Statement") and other SEC filings on behalf of the Company.

10. Defendant Harminder Sehmi ("Sehmi") has served as the Company's Chief Financial Officer at all relevant times. Defendant Sehmi signed the Registration Statement and other SEC filings on behalf of the Company.

11. Defendant Edward Frank ("Frank") served as a director of Blaize at the time of the Offering and signed the Registration Statement.

12. Defendant Lane Bess ("Bess") served as a director of Blaize at the time of the Offering and signed the Registration Statement.

13. Defendant Juergen Hambrecht ("Hambrecht") served as a director of Blaize at the time of the Offering and signed the Registration Statement.

14. Defendant Tony Cannestra ("Cannestra") served as a director of Blaize at the time of the Offering and signed the Registration Statement.

15. Defendant George de Urioste ("de Urioste") served as a director of Blaize at the time of the Offering and signed the Registration Statement.

16. Defendant Yoshiaki Fujimori ("Fujimori") served as a director of Blaize at the time of the Offering and signed the Registration Statement.

17. Defendants Munagala, Sehmi, Frank, Bess, Hambrecht, Cannestra, de Urioste, and Fujimori are collectively referred to herein as the "Securities Act Individual Defendants." Each Securities Act Individual Defendant signed the Registration Statement or authorized its signing, participated in the preparation, review, or approval of the Offering Materials, participated in the Offering, and solicited the purchases of Blaize common stock in the Offering to serve their financial interests and those of Blaize.

18. Defendants Munagala and Sehmi are collectively referred to herein as the "Exchange Act Individual Defendants." Because of their positions with Blaize, the Exchange Act Individual Defendants possessed the power and authority to control the contents of the Company's SEC filings, press releases, and other public statements alleged herein.

19. Defendant Northland Securities, Inc. ("Northland") served as the representative of the underwriters and sole book-running manager for the Offering. Pursuant to the Offering's underwriting agreement, Northland agreed to purchase 15,135,135 shares of Blaize common stock for resale to the public.

20. Defendant The Benchmark Company, LLC ("Benchmark") served as co-manager for the Offering. Pursuant to the Offering's underwriting agreement, Benchmark agreed to purchase 3,783,783 shares of Blaize common stock for resale to the public.

21. Northland and Benchmark are collectively referred to herein as the "Underwriter Defendants." The Underwriter Defendants participated in drafting and disseminating the Offering Materials, soliciting investors for the Offering, and marketing and pricing the Offering. The Underwriter Defendants shared

approximately $2.1 million in underwriting discounts and commissions in connection with the Offering.

22. Blaize, the Securities Act Individual Defendants, and the Underwriter Defendants are collectively referred to herein as the "Securities Act Defendants." Blaize and the Exchange Act Individual Defendants are collectively referred to herein as the "Exchange Act Defendants." The Securities Act Defendants and the Exchange Act Defendants are collectively referred to herein as "Defendants."

## CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) on behalf of:

a. All persons and entities that purchased or otherwise acquired Blaize common stock between July 17, 2025 and August 13, 2026, inclusive, except those excluded below, against Blaize and the Exchange Act Individual Defendants for violations of Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder; and

b. All persons and entities that purchased or otherwise acquired Blaize common stock pursuant or traceable to the Offering Materials issued in connection with the May 2026 Offering, except those excluded below, against the Securities Act Defendants for violations of Sections 11, 12(a)(2), and 15 of the Securities Act.

24. Excluded from the Classes are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

25. The members of the Classes are so numerous that joinder of all members is impracticable. While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the

proposed Classes. Throughout the Class Period, Blaize common stock actively traded on NASDAQ (an open and efficient market) under the symbol "BZAI." Millions of Blaize shares were traded publicly during the Class Period on the NASDAQ. As of August 13, 2026, the Company had more than 144 million shares of common stock outstanding, including the 18,918,918 shares of common stock Blaize sold in the Offering. Record owners and other members of the Classes may be identified from records maintained by Blaize or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

26. Plaintiff's claims are typical of the claims of the other members of the Classes as all members of the Classes were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27. Plaintiff will fairly and adequately protect the interests of the members of the Classes and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests that conflict with those of the Classes.

28. Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes. Among the questions of law and fact common to the Classes are:

a. whether Defendants violated the Exchange Act and/or the Securities Act by the acts and omissions alleged herein;

b. whether Defendants misrepresented and/or omitted material facts; and

c. whether and to what extent members of the Classes sustained damages, as well as the appropriate measure of damages.

29. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the Classes may be relatively small, the expense and burden of individual litigation make

it impossible for members of the Classes to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

## ALLEGATIONS UNDER THE EXCHANGE ACT

### The Exchange Act Defendants' Materially False and Misleading Statements Issued During the Class Period

30. The Class Period begins on July 17, 2025, when, before the market opened, Blaize filed a Current Report on Form 8-K with the SEC, which was signed by Defendant Munagala, announcing that it had entered into a Strategic Cooperation Agreement with Starshine Computing Power Technology Limited ("Starshine," hereinafter the "Starshine Agreement"). The 8-K highlighted that "Blaize and Starshine are entering into a strategic partnership to develop business opportunities for the sale of Blaize's hybrid AI platform and other products and services through Starshine in the Asia Pacific region." It further represented that "***Starshine has agreed to deliver a minimum of $120 million in revenue to Blaize over the first 18 months of the Agreement.***"

31. After the market closed that same day, Blaize issued a press release providing additional details regarding the Starshine Agreement. The press release stated that Blaize's hybrid AI platform would be deployed in collaboration with Starshine, "with the initial phase beginning in fiscal Q3 2025 and continuing through 2026." The press release further stated that "[t]he collaboration between Blaize and Starshine will work to ***efficiently drive real-world hybrid AI deployment across Asia through scalable infrastructure***, powering smart cities, industrial automation, and intelligent public services," and that "[t]he agreement ***carries a minimum value of $120 million in revenue over the initial 18-month term***." The press release also quoted Defendant Munagala stating that, "[t]ogether with Starshine, we're providing sovereign-grade infrastructure where programmable, energy-efficient inference becomes the backbone of smart cities, industrial environment, and public services."

32. On July 18, 2025, Blaize filed a second Current Report on Form 8-K with the SEC, also signed by Defendant Munagala, in which it announced updated revenue guidance of ***at least $35 million in 2025*** *and* ***at least $130 million in 2026***, further noting that, together with the Starshine Agreement and a previously announced $56 million edge AI deployment, the Company had "***entered into new contracts for an aggregate of $176 million***," to be fulfilled through 2026.

33. The statements referenced in ¶¶ 30–32 were materially false and/or misleading when made because they failed to disclose material adverse facts concerning Starshine and the Starshine Agreement. The Exchange Act Defendants failed to disclose, among other things, that: (i) Starshine was an unproven counterparty whose website had been registered shortly before the agreement was announced; (ii) Starshine's website contained stock imagery and products apparently sourced from other companies, calling into question whether Starshine had meaningful proprietary products or operations; (iii) there was substantial uncertainty whether Starshine had the resources and operational capacity to fully perform its obligations under the Starshine Agreement; and (iv) as a result, the Exchange Act Defendants lacked a reasonable basis for representing that the Starshine Agreement had a minimum value of $120 million or would support Blaize's projected revenue through 2026.

34. On November 13, 2025, Blaize issued a press release announcing its financial results for the third quarter of 2025, in which Blaize stated that it had "[i]nitiated fulfillment of the $120 million multi-year contract with Starshine[.]" During the accompanying earnings call, Defendant Munagala similarly described Starshine as a "$120 million collaboration" with shipments continuing through 2026. Defendant Sehmi stated that approximately $10.4 million of Blaize's third-quarter revenue was attributable to initial shipments under the Starshine Agreement, "which we expect to collect in full before the end of the year." Defendant Sehmi further stated that Starshine was one of two deals for the Company "expected to support our revenue projections over the next 6 quarters or so."

35. The statements referenced in ¶ 34 were materially false and/or misleading when made because they failed to disclose material adverse facts concerning Starshine and the Starshine Agreement. The Exchange Act Defendants failed to disclose, among other things, that: (i) Starshine was an unproven counterparty whose website had been registered shortly before the agreement was announced; (ii) Starshine's website contained stock imagery and products apparently sourced from other companies, calling into question whether Starshine had meaningful proprietary products or operations; (iii) there was substantial uncertainty whether Starshine had the resources and operational capacity to fully perform its obligations under the Starshine Agreement; and (iv) as a result, the Exchange Act Defendants lacked a reasonable basis for representing that the Starshine Agreement had a value of $120 million or would support Blaize's projected revenue for the next six quarters.

36. On March 24, 2026, Blaize announced its financial results for the fourth quarter and full-year 2025 and provided full-year 2026 revenue guidance of $130 million. During the accompanying earnings call, Defendant Sehmi stated that the revenue guidance was "really supported by some of the engagements we've had and what we expect to close during the year." When later asked how much of the $130 million guidance was supported by backlog or other commitments, Defendant Sehmi stated that Blaize's two previously announced large contracts remained in place and that the Company was "still delivering against those." Defendant Sehmi further explained that customers "draw down by issuing purchase orders on us," which he cited in explaining why Blaize remained comfortable with its $130 million guidance.

37. The statements referenced in ¶ 36 were materially false and/or misleading when made because they failed to disclose material adverse facts concerning Starshine and the Starshine Agreement. The Exchange Act Defendants failed to disclose, among other things, that: (i) Starshine was an unproven counterparty whose website had been registered shortly before the agreement was announced; (ii) Starshine's website contained stock imagery and products apparently sourced from other companies,

calling into question whether Starshine had meaningful proprietary products or operations; (iii) there was substantial uncertainty whether Starshine had the resources and operational capacity to fully perform its obligations under the Starshine Agreement; and (iv) as a result, the Exchange Act Defendants lacked a reasonable basis for representing that Blaize would achieve its $130 million 2026 revenue guidance.

38. On April 14, 2026, Blaize issued a press release announcing preliminary revenue for the first quarter of 2026 and a newly awarded contract with NeoTensr that was "***expected to generate $50.0 million in revenue***[,]" with fulfillment expected to begin in the second quarter. The press release further quoted Defendant Sehmi stating that Blaize had "***secured the inventory needed to deliver $10.0–$12.0 million to our customer in late April and May***" and that "***we remain on track with our full year 2026 revenue guidance***" of $130.0 million. That same day, Blaize filed a Current Report on Form 8-K with the SEC stating that the NeoTensr contract was "***for up to $50.0 million in revenue within the first year of the agreement,*** subject to NeoTensr's issuance of purchase orders." The 8-K further stated that the contract was "***in addition to the $23.8 million earned by the Company in the fourth quarter of 2025 from a NeoTensr purchase order***."

39. Then, on April 16, 2026, Blaize issued a press release announcing that the Company and NeoTensr "today announced an ***up to $50.0 million contract to jointly develop and deploy co-branded AI edge data center infrastructure*** targeting the rapidly growing compute market across the broader Asia Pacific region."

40. The statements referenced in ¶¶ 38–39 were materially false and/or misleading when made because they failed to disclose material adverse facts concerning NeoTensr and its relationship with Blaize. The Exchange Act Defendants failed to disclose, among other things, that: (i) NeoTensr was an unproven counterparty whose website was registered on December 18, 2025, the entity was not incorporated until December 22, 2025, and Chinese entity records reflected only

approximately $2 million in reported startup capital; (ii) there was substantial uncertainty whether NeoTensr had the resources and operational capacity to issue purchase orders sufficient to generate the $50 million in first-year revenue the contract was expected to generate for Blaize; (iii) as of March 31, 2026, 53% of Blaize's accounts receivable were more than 90 days past due, and two customers located in China accounted for approximately 93.3% of the Company's accounts receivable, with subsequent disclosures indicating that those customers were Starshine and NeoTensr; (iv) Blaize had not secured the inventory needed for the anticipated NeoTensr delivery despite representing that it had "secured the inventory needed" to deliver $10 million to $12 million in late April and May; (v) to date, Starshine still had not issued any purchase orders to Blaize during 2026; and (vi) as a result, the Exchange Act Defendants lacked a reasonable basis for representing that Blaize would make the anticipated NeoTensr delivery and that the Company would achieve its full-year 2026 revenue guidance.

**<u>The Partial Truth Begins to Emerge</u>**

41. On April 28, 2026, Pelican Way Research ("Pelican") published a report entitled "Blaize AI: Running Up The Share Price Based on a Seemingly Bogus Deal, Conveniently Timed for Massive Dilution" (the "Pelican Report").

42. The Pelican Report focused on the Company's recently announced agreement with NeoTensr, stating that Blaize had "artificially boosted" its stock price through what Pelican described as a "bogus deal with a 4-month-old counterparty" whose website featured products that "appear to be photoshopped to add the Blaize logo." The Pelican Report characterized NeoTensr as a "brand-new entity" that had entered into what Pelican characterized as a "lifesaving deal with Blaize," despite reporting only approximately $2 million in startup capital.

43. According to Pelican's investigation, NeoTensr "seems to have just materialized out of thin air." Pelican found that NeoTensr's website was registered on December 18, 2025, only months before the announced agreement, and NeoTensr

itself was incorporated four days later, on December 22, 2025. The Pelican Report concluded that the timing of NeoTensr's formation and the subsequent announcement "appears highly suspicious."



**About Blaize**

Blaize delivers a programmable AI platform, purpose-built for AI inference workloads in real-world environments. Its Hybrid AI architecture combines the Blaize GSP (Graph Streaming Processor) with GPU-based infrastructure, enabling AI inference workloads to run across edge, cloud, and data center. Blaize solutions support computer vision, multimodal AI, and sensor-driven applications across smart cities, industrial automation, telecommunications, retail, logistics, and defense. Blaize is headquartered in El Dorado Hills, California, with a global presence across North America, Europe, the Middle East, and Asia. Visit www.blaize.com or follow us on LinkedIn @blaizeinc.

**About NeoTensr**

NeoTensr is a technology company specializing in hardware and software system development for edge, enterprise, and data center environments. NeoTensr is actively building AI-enabled infrastructure across the Asia Pacific region, with a focus on scalable, production-ready AI systems for smart cities, industrial, and enterprise markets. For more information, visit www.neotensr.com.



44. The Pelican Report further stated that Chinese entity records reflected that NeoTensr reported "just ~$2mm (~15mm RMB) in startup capital," which Pelican noted was unverified.

45. The Pelican Report drew a parallel between the NeoTensr agreement and Blaize's previously announced agreement with Starshine, stating that the Starshine transaction had "all the hallmarks of being a fantasy," that Starshine's website contained stock photographs and products allegedly originating from other companies, and that Starshine's domain had been registered only weeks before the agreement was announced. Pelican also noted that Starshine had paid approximately $1.6 million toward its only $10.4 million purchase order, while the remaining $8.8 million remained outstanding as of March 24, 2026.

46. Following publication of the Pelican Report, the price of Blaize shares fell 12%, or $0.26 per share, from a closing price of $2.16 per share on April 27, 2026, to a closing price of $1.90 per share on April 28, 2026.

**The Exchange Act Defendants Continue to Mislead**

47. Despite the Pelican Report and resulting stock price decline, Blaize did not directly respond to Pelican before proceeding with the Offering. Instead, one week later, on May 5, 2026, Blaize filed a preliminary prospectus supplement with the SEC, followed by a final prospectus supplement on May 6, 2026 (the "Prospectus"). The Prospectus, Blaize's previously effective shelf Registration Statement, and the documents incorporated therein are collectively referred to herein as the "Offering Materials." The Offering Materials repeated that the Company had earned $23.8 million from NeoTensr during the fourth quarter of 2025 and expected to commence fulfillment under the new NeoTensr agreement during the second quarter of 2026. The Offering Materials further stated that Blaize had "confirmed that it will secure the inventory to deliver approximately $10–12 million to a customer in late April or May 2026."

48. The Offering Materials further described NeoTensr and Starshine as "key customers," explained that "[a]ny significant reduction, delay, or discontinuation of orders by any major customer . . . ***could*** materially and adversely affect our business," and warned that the potential "non-payment by [a major] customer would have a substantial negative impact on our company."

49. The statements referenced in ¶¶ 47–48 were materially false and/or misleading when made because the Offering Materials failed to disclose then-existing material facts concerning the Starshine and NeoTensr agreements and Blaize's receivables. The Exchange Act Defendants failed to disclose, among other things, that: (i) as of March 31, 2026, 53% of Blaize's accounts receivable were more than 90 days past due; (ii) two customers located in China accounted for approximately 93.3% of the Company's accounts receivable, with subsequent disclosures indicating

that those customers were Starshine and NeoTensr; (iii) Blaize had not secured the inventory needed for the anticipated NeoTensr delivery even though the Offering Materials stated that Blaize had "confirmed that it will secure the inventory to deliver approximately $10–12 million to a customer in late April or May 2026"; and (iv) to date, Starshine still had not issued any purchase orders to Blaize during 2026.

50. On May 14, 2026, after the market closed, Blaize announced its financial results for the first quarter of 2026 and filed its Quarterly Report on Form 10-Q with the SEC (the "1Q26 10-Q"). The 1Q26 10-Q disclosed additional information concerning the Company's receivables. Specifically, as of March 31, 2026, 53% of accounts receivable were more than 90 days past due; the allowance for credit losses had increased from $557,000 at December 31, 2025 to $2.43 million; and two customers located in China—Customer C and Customer D—accounted for 46.2% and 47.1% of accounts receivable, with respective balances of approximately $8.8 million and $9.0 million. Although the 1Q26 10-Q did not identify the customers by name, upon information and belief, Customer C and Customer D were Starshine and NeoTensr, respectively. The 1Q26 10-Q further disclosed that Blaize had received $16.9 million in payments on the previously disclosed $23.8 million fourth-quarter hardware sale through May 14, leaving approximately $6.8 million outstanding.

51. Notwithstanding those additional disclosures, Blaize reaffirmed its $130 million full-year 2026 revenue guidance and stated that it remained focused on "building the inventory needed to fulfill our contracted pipeline." During the accompanying earnings call, Defendant Sehmi stated that the NeoTensr order had "shifted into the second quarter[,]" and later explained that Blaize "could have secured supply, but we would have actually had to pay premiums that we weren't prepared to at the time."

52. The statements referenced in ¶ 51 were materially false and/or misleading when made because they failed to disclose material adverse facts concerning NeoTensr and its relationship with Blaize. The Exchange Act Defendants failed to

disclose, among other things, that: (i) there was substantial uncertainty whether NeoTensr had the resources and operational capacity to issue purchase orders sufficient to generate the $50 million in first-year revenue the contract was expected to generate for Blaize; and (ii) as a result, the Exchange Act Defendants lacked a reasonable basis for representing that Blaize would achieve its full-year 2026 revenue guidance.

**The Truth is Finally Revealed**

53. On August 13, 2026, after the market closed, Blaize issued a press release announcing its financial results for the second quarter of 2026 (the "2Q26 Press Release"). In the 2Q26 Press Release, Blaize significantly reduced its full-year 2026 revenue outlook from $130 million to a range of $40 million to $43 million, stating that the revised outlook reflected "engagements that did not convert into orders" and supply-chain cost inflation driven by materially higher memory pricing. The 2Q26 Press Release quoted Defendant Munagala stating that "[w]hat changed is the pace at which opportunity converts into orders, alongside materially higher memory pricing[,]" while Defendant Sehmi stated that the revised outlook was based on "binding, non-cancellable purchase orders" and excluded opportunities that were still advancing.

54. In its Quarterly Report on Form 10-Q filed with the SEC that same day, Blaize disclosed that Starshine's previously disclosed $8.8 million receivable remained outstanding. Blaize further disclosed that collection of the receivable was being pursued by a third-party collections agent and that there was "substantial risk" the collection effort would not succeed. Blaize also disclosed that it still had not received any purchase orders from Starshine in 2026 and did not expect further purchase orders from Starshine.

55. During the accompanying earnings call, Defendant Sehmi explained the reduction in 2026 revenue guidance, stating that "several commercial opportunities did not materialize as we expected." Defendant Sehmi stated that Blaize "had planned

on fulfilling a regular cadence of purchase orders from customers already under contract." With respect to Starshine, Defendant Sehmi stated that Blaize had decided "not to engage further until Starshine pays its outstanding balance" and that there was "meaningful uncertainty as to whether it will progress further." Defendant Sehmi further stated that Blaize had "fully reserved the receivable this quarter." He further stated that Blaize had "raised the bar for what we are willing to include in guidance going forward."

56. On this news, the price of Blaize common stock fell sharply by nearly 50%, or $0.58 per share, from a closing price of $1.17 per share on August 13, 2026, to a closing price of $0.59 per share on August 14, 2026.

## UNDISCLOSED ADVERSE INFORMATION

57. The market for Blaize's common stock was an open, well-developed, and efficient market at all relevant times. As a result of the materially false and/or misleading statements and/or omissions particularized in this Complaint, Blaize common stock traded at artificially inflated prices during the Class Period. Plaintiff and the other members of the Exchange Act Class purchased Blaize common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Blaize and have been damaged thereby.

58. During the Class Period, the Exchange Act Defendants materially misled the investing public, thereby inflating the price of Blaize common stock, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make the Exchange Act Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Blaize's business, operations, and prospects as alleged herein. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus causing the Company's common stock to be overvalued and artificially

inflated or maintained at all relevant times. The Exchange Act Defendants' materially false and/or misleading statements during the Class Period directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Exchange Act Class who purchased the Company's common stock at artificially inflated prices and were harmed when the truth was revealed.

## SCIENTER ALLEGATIONS

59. As alleged herein, the Exchange Act Defendants acted with scienter in that the Exchange Act Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

60. As set forth herein, the Exchange Act Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Blaize, their control over, receipt, and/or modification of Blaize's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Blaize, participated in the fraudulent scheme alleged herein.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

61. The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein include statements relating to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, there were no meaningful cautionary statements

identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

62. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, the Exchange Act Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Blaize who knew that the statement was false when made.

## LOSS CAUSATION

63. The Exchange Act Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, i.e., damages, suffered by Plaintiff and the Exchange Act Class.

64. During the Class Period, as detailed herein, the Exchange Act Defendants made materially false and misleading statements and omissions and engaged in a scheme to deceive the market. This artificially inflated the prices of Blaize common stock and operated as a fraud or deceit on the Exchange Act Class. When the Exchange Act Defendants' prior misrepresentations, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, and the foreseeable risks concealed by the Exchange Act Defendants materialized, the price of Blaize's stock fell precipitously, as the prior artificial inflation came out of the price.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

65. The market for Blaize common stock was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this Complaint, Blaize common stock traded at artificially inflated and/or maintained prices during the Class Period.

Plaintiff and other members of the Exchange Act Class purchased the Company's common stock relying upon the integrity of the market price of Blaize common stock and market information relating to Blaize and have been damaged thereby.

66. At all times relevant, the market for Blaize common stock was an efficient market for the following reasons, among others:

a. Blaize was listed and actively traded on NASDAQ, a highly efficient and automated market;

b. As a regulated issuer, Blaize filed periodic public reports with the SEC and/or the NASDAQ;

c. Blaize regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d. Blaize was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

67. As a result of the foregoing, the market for Blaize common stock promptly digested current information regarding Blaize from all publicly available sources and reflected such information in Blaize's stock price. Under these circumstances, all purchasers of Blaize stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices, and a presumption of reliance applies.

68. A Class-wide presumption of reliance is also appropriate for the Exchange Act Class in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Exchange Act Class's claims are, in large part, grounded in the Exchange Act Defendants' material

misstatements and/or omissions. Because this action involves the Exchange Act Defendants' failure to disclose material adverse information regarding the Company's business, operations, and prospects—information that the Exchange Act Defendants were obligated to disclose during the Class Period but did not—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## EXCHANGE ACT COUNTS

## COUNT I

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Against Blaize and the Exchange Act Individual Defendants

69. Plaintiff repeats, incorporates, and realleges each and every allegation set forth above, except those that pertain only to the Securities Act claims and/or disclaim fraud or scienter (including ¶ 2), as if fully set forth herein.

70. During the Class Period, Blaize and the Exchange Act Individual Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Exchange Act Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Blaize common stock; and (iii) cause Plaintiff and other members of the Exchange Act Class to purchase Blaize common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, the Exchange Act Defendants took the actions set forth herein.

71. Blaize and the Exchange Act Individual Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct that operated as a fraud

and deceit upon purchasers of the Company's common stock in an effort to maintain artificially high market prices for Blaize common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. The Exchange Act Defendants are sued as primary participants in the wrongful and illegal conduct charged herein and as controlling persons as alleged below.

72. Blaize and the Exchange Act Individual Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Blaize's business, operations, and prospects, as specified herein. The Exchange Act Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Blaize's business, operations, and prospects, which included the making of, or participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary to make the statements made about Blaize and its business, operations, and future prospects, in light of the circumstances under which they were made, not misleading, and engaged in transactions, practices, and a course of business that operated as a fraud and deceit upon purchasers of the Company's common stock during the Class Period.

73. Each Exchange Act Individual Defendant's primary liability and controlling-person liability arises from the following facts: (i) each was a high-level executive and/or director of Blaize during the Class Period and a member of the Company's management team or had control thereof; (ii) each, by virtue of his responsibilities and activities as a senior officer and/or director, was privy to and participated in the creation, development, and reporting of the Company's business, operations, and prospects; (iii) each enjoyed significant personal contact and familiarity with the other Exchange Act Individual Defendants and was advised of and had access to other members of the Company's management team, internal reports,

and other data and information concerning the Company's financial condition and performance at all relevant times; and (iv) each was aware of the Company's dissemination of information to the investing public, which he knew and/or recklessly disregarded was materially false and misleading.

74. Blaize and the Exchange Act Individual Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and disclose such facts, even though such facts were available to them. The Exchange Act Defendants' material misrepresentations and/or omissions were made knowingly or recklessly for the purpose and effect of concealing Blaize's operating condition, business practices, and prospects from the investing public and supporting the artificially inflated and/or maintained price of its common stock. As demonstrated by the Exchange Act Defendants' overstatements and misstatements throughout the Class Period, the Exchange Act Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether the statements were false or misleading.

75. As a result of the dissemination of materially false and/or misleading information and/or the failure to disclose material facts, the market price of Blaize common stock was artificially inflated. Relying directly or indirectly on the false and misleading statements made by the Exchange Act Defendants or upon the integrity of the market in which the common stock traded, and/or in the absence of material adverse information known or recklessly disregarded by the Exchange Act Defendants but not disclosed in their public statements during the Class Period, Plaintiff and other members of the Exchange Act Class purchased Blaize common stock during the Class Period at artificially inflated prices and were damaged thereby.

76. At the time of the misrepresentations and omissions, Plaintiff and other members of the Exchange Act Class were ignorant of their falsity and believed them

to be true. Had Plaintiff, the other members of the Exchange Act Class, and the marketplace known the truth regarding the problems Blaize was experiencing, which were not disclosed by the Exchange Act Defendants, Plaintiff and other members of the Exchange Act Class would not have purchased Blaize common stock or would not have done so at the artificially inflated prices they paid.

77. By virtue of the foregoing, Blaize and the Exchange Act Individual Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

78. As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Exchange Act Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**COUNT II**

**For Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants**

79. Plaintiff repeats, incorporates, and realleges each and every allegation set forth above, except those that pertain only to the Securities Act claims and/or disclaim fraud or scienter (including ¶ 2), as if fully set forth herein.

80. The Exchange Act Individual Defendants acted as controlling persons of Blaize within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations, and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Exchange Act Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. Each Exchange Act Individual Defendant was provided with or had unlimited access to copies of the Company's reports, press

releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after those statements were issued and had the ability to prevent their issuance or cause them to be corrected.

81. In particular, the Exchange Act Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations alleged herein and exercised the same.

82. As set forth above, Blaize and the Exchange Act Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

83. As a direct and proximate result of the Exchange Act Individual Defendants' wrongful conduct, Plaintiff and other members of the Exchange Act Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## ALLEGATIONS UNDER THE SECURITIES ACT

84. In this section of the Complaint, Plaintiff asserts strict liability and negligence claims against the Securities Act Defendants pursuant to the Securities Act, on behalf of those who purchased or otherwise acquired Blaize common stock pursuant or traceable to the Offering.

85. The Securities Act allegations herein are based on strict liability and negligence, and Plaintiff expressly disclaims any allegation or inference of fraud or scienter for these allegations. Accordingly, for purposes of the Securities Act claims, Plaintiff expressly disclaims all allegations above pertaining to the Exchange Act claims, including the allegations set forth in ¶¶ 30–83. For the avoidance of doubt, the only allegations above that Plaintiff incorporates by reference in this section of the Complaint are those pertaining to the Securities Act claims set forth in: the preamble paragraph; ¶¶ 1–2 (Nature of the Action); ¶¶ 3–6 (Jurisdiction and Venue); ¶¶ 7–17

and ¶¶ 19–22 (Parties); and ¶¶ 23–29 (Class Action Allegations).

**The May 2026 Public Offering**

86. On January 27, 2026, Blaize filed the Registration Statement with the SEC, which became effective on February 4, 2026. Blaize subsequently filed the preliminary prospectus supplement on May 5, 2026, and the Prospectus on May 6, 2026.

87. Pursuant to the Offering Materials and an underwriting agreement dated May 5, 2026, Blaize offered and sold 18,918,918 shares of its common stock to the public at $1.85 per share. The Offering generated gross proceeds of approximately $35 million and net proceeds to Blaize of approximately $32.8 million after deducting underwriting discounts and offering expenses paid by the Company. Blaize also granted the Underwriter Defendants a 30-day option to purchase up to 2,837,837 additional shares.

88. Northland agreed to purchase 15,135,135 shares and Benchmark agreed to purchase 3,783,783 shares. The shares sold in the Offering were scheduled for delivery against payment on May 7, 2026.

**The Offering Materials Contained Inaccurate Statements of Material Fact and Omitted Material Information Required to Be Disclosed Therein**

89. Under the heading "Preliminary First Quarter Revenue," the Offering Materials stated that, on April 14, 2026, Blaize had announced preliminary expected first-quarter 2026 revenue of approximately $2.7 million and explained the "[r]esults ***were primarily impacted by temporary supply chain constraints*** that affected shipment timing, ***despite solid underlying customer demand***." The Offering Materials also stated that Blaize had "***confirmed that it will secure the inventory to deliver approximately $10-12 million to a customer in late April or May 2026***[,]" referring to NeoTensr.

90. Under the heading "Business Update," the Offering Materials stated that Blaize had received a new contract with NeoTensr "***for up to $50.0 million in revenue***

***within the first year***," subject to NeoTensr's issuance of purchase orders; that the potential revenue was "in addition to the $23.8 million earned by Blaize in the fourth quarter of 2025 from a NeoTensr purchase order"; and that Blaize "***expect[ed] to commence fulfillment under the NeoTensr [a]greement in the second quarter of 2026***."

91. The statements referenced in ¶¶ 89–90 were materially false and/or misleading when made because the Offering Materials failed to disclose then-existing material facts concerning the Company's preliminary financial results for the first quarter of 2026, the Starshine and NeoTensr agreements, and Blaize's receivables. The Securities Act Defendants failed to disclose, among other things, that: (i) as of March 31, 2026, 53% of Blaize's accounts receivable were more than 90 days past due; (ii) two customers located in China accounted for approximately 93.3% of the Company's accounts receivable, with subsequent disclosures indicating that those customers were Starshine and NeoTensr; (iii) Blaize had not secured the inventory needed for the anticipated NeoTensr delivery; and (iv) Starshine still had not issued any purchase orders to Blaize during 2026.

92. Under the heading "Our contracts with key customers are not subject to minimum purchase commitments, and these customers may reduce or cease orders at any time, which could materially and adversely affect our business," the Offering Materials stated that many contracts with "***key customers, including NeoTensr and Starshine, do not have minimum purchase commitments***" and were subject to customer purchase orders. Under that risk factor, the Offering Materials further explained that ***"[a]ny significant reduction, delay, or discontinuation of orders by any major customer . . . could materially and adversely affect our business***," and warned that the potential "***non-payment by [a major] customer would have a substantial negative impact on our company***."

93. The statements referenced in ¶ 92 were materially false and/or misleading when made because the Offering Materials failed to disclose then-existing material

facts concerning the Starshine and NeoTensr agreements and Blaize's receivables. The Securities Act Defendants failed to disclose, among other things, that: (i) as of March 31, 2026, 53% of Blaize's accounts receivable were more than 90 days past due; (ii) two customers located in China accounted for approximately 93.3% of the Company's accounts receivable, with subsequent disclosures indicating that those customers were Starshine and NeoTensr; (iii) Blaize had not secured the inventory needed for the anticipated NeoTensr delivery; and (iv) Starshine still had not issued any purchase orders to Blaize during 2026.

94. As of the date of this filing, the price of Blaize common stock has yet to recover. On September 17, 2026, Blaize common stock closed at $0.62 per share—$1.23 per share, or 66.5%, below the $1.85 Offering price.

95. As a result of the Securities Act Defendants' wrongful acts and omissions and the decline in the market value of Blaize common stock, Plaintiff and other members of the Securities Act Class have suffered significant losses and damages.

## SECURITIES ACT COUNTS

## COUNT III

### For Violations of Section 11 of the Securities Act Against Blaize, the Securities Act Individual Defendants, and the Underwriter Defendants

96. Plaintiff repeats, incorporates, and realleges each and every allegation set forth above relating to the Securities Act claims as if fully set forth herein, and expressly disclaims each allegation relating to the Exchange Act claims, including any allegation or implication of fraud, recklessness, or intentional misconduct. For the avoidance of doubt, the only allegations above that Plaintiff incorporates by reference in this Count are those pertaining to the Securities Act claims set forth in: the preamble paragraph; ¶¶ 1–2 (Nature of the Action); ¶¶ 3–6 (Jurisdiction and Venue); ¶¶ 7–17 and ¶¶ 19–22 (Parties); ¶¶ 23–29 (Class Action Allegations); and ¶¶ 84–95 (Allegations Under the Securities Act). Plaintiff expressly disclaims all allegations above pertaining to the Exchange Act claims, including the allegations set forth in

¶¶ 30–83.

97. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Securities Act Class, against Blaize, each of the Securities Act Individual Defendants, and each of the Underwriter Defendants. This Count does not allege, and does not intend to allege, fraud or scienter, which are not elements of a Section 11 claim, and any implication of fraud or scienter is expressly disclaimed.

98. The Offering Materials issued in connection with the Offering were inaccurate and misleading, contained inaccurate and misleading statements of material facts, omitted to state material facts necessary to render the statements therein not misleading, and omitted to state material facts required to be stated therein.

99. Blaize is the registrant and issuer of the common stock sold pursuant to the Offering Materials. The Securities Act Defendants named herein were responsible for the contents and dissemination of the Offering Materials. Each Securities Act Individual Defendant signed or authorized the signing of the Registration Statement. The Underwriter Defendants marketed and underwrote the Offering and sold the Blaize common stock issued in the Offering to the Securities Act Class.

100. As the issuer of the shares of Blaize common stock sold pursuant to the Offering Materials, Blaize is strictly liable to the Securities Act Class for the Offering Materials' material misstatements and omissions. The Securities Act Individual Defendants and the Underwriter Defendants are also liable to the Securities Act Class for the material misstatements and omissions alleged herein.

101. None of the Securities Act Defendants named herein made a reasonable investigation or possessed reasonable grounds to believe that the statements in the Offering Materials were true, complete, accurate, without omissions of any material facts, or not misleading.

102. By reason of the conduct alleged herein, each of the Securities Act Defendants named herein violated Section 11 of the Securities Act.

103. The challenged statements concerning the status of inventory, as well as the omissions concerning the aging and concentration of Blaize's receivables concerned existing or historical facts. To the extent any challenged statement also contained a forward-looking component, liability is predicated on the inaccurate statements and omissions of then-existing material facts identified above.

104. Less than one year has elapsed from the time that Plaintiff discovered, or reasonably could have discovered, the facts upon which these claims are based to the time that Plaintiff filed this action. Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this action.

105. Plaintiff and the Securities Act Class have sustained damages. The value of Blaize common stock has declined substantially subsequent to and due to the violations by the Securities Act Defendants named in this Count.

106. At the time of their purchases of Blaize common stock, Plaintiff and other members of the Securities Act Class did not know that the challenged statements in the Offering Materials were inaccurate or misleading or know of the facts concerning the wrongful conduct alleged herein.

## COUNT IV

## For Violations of Section 12(a)(2) of the Securities Act Against the Securities Act Defendants

107. Plaintiff repeats, incorporates, and realleges each and every allegation set forth above relating to the Securities Act claims as if fully set forth herein, and expressly disclaims each allegation relating to the Exchange Act claims, including any allegation or implication of fraud, recklessness, or intentional misconduct. For the avoidance of doubt, the only allegations above that Plaintiff incorporates by reference in this Count are those pertaining to the Securities Act claims set forth in: the preamble paragraph; ¶¶ 1–2 (Nature of the Action); ¶¶ 3–6 (Jurisdiction and Venue); ¶¶ 7–17 and ¶¶ 19–22 (Parties); ¶¶ 23–29 (Class Action Allegations); ¶¶ 84–95 (Allegations

Under the Securities Act); and ¶¶ 96–106 (Count III). Plaintiff expressly disclaims all allegations above pertaining to the Exchange Act claims, including the allegations set forth in ¶¶ 30–83.

108. This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of the Securities Act Class, against Blaize, the Securities Act Individual Defendants, and the Underwriter Defendants. This Count does not allege, and does not intend to allege, fraud or scienter, which are not elements of a Section 12(a)(2) claim, and any implication of fraud or scienter is expressly disclaimed.

109. Each of the Defendants named in this Count was a seller, offeror, or solicitor of purchases of the Company's common stock pursuant to the defective Prospectus that formed in relevant part the Offering Materials. The actions of solicitation by these Securities Act Defendants include participating in the preparation of the inaccurate and misleading Prospectus and marketing the common stock to investors, including members of the Securities Act Class. The Underwriter Defendants purchased the Offering shares from Blaize for resale to the public and offered and sold those shares pursuant to the Prospectus.

110. The Prospectus contained untrue statements of material fact, omitted to state other facts necessary to make statements made therein not misleading, and omitted to state material facts required to be stated therein.

111. Each of the Securities Act Defendants named in this Count owed Plaintiff and other members of the Securities Act Class that purchased Blaize common stock pursuant to the Prospectus a duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. By virtue of each Securities Act Defendant's failure to exercise reasonable care, the Prospectus contained misrepresentations of material fact and omissions of material fact necessary to make

the statements therein not misleading.

112. Plaintiff and the members of the Securities Act Class did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus issued in connection with the Offering at the time they purchased Blaize common stock.

113. By reason of the conduct alleged herein, the Securities Act Defendants violated Section 12(a)(2) of the Securities Act. As a direct and proximate result of such violations, Plaintiff and the other members of the Securities Act Class that purchased Blaize common stock pursuant to the Offering sustained substantial damages in connection therewith. Accordingly, Plaintiff and the other members of the Securities Act Class that hold common stock issued pursuant to the Offering have the right to rescind and recover the consideration paid for their shares with interest thereon or damages as allowed by law or in equity. Members of the Securities Act Class that have sold their Blaize common stock seek damages to the extent permitted by law.

114. Less than one year has elapsed from the time that Plaintiff discovered, or reasonably could have discovered, the facts upon which these claims are based to the time that Plaintiff filed this action. Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this action.

## COUNT V

## For Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants

115. Plaintiff repeats, incorporates, and realleges each and every allegation set forth above relating to the Securities Act claims as if fully set forth herein, and expressly disclaims each allegation relating to the Exchange Act claims, including any allegation or implication of fraud, recklessness, or intentional misconduct. For the avoidance of doubt, the only allegations above that Plaintiff incorporates by reference in this Count are those pertaining to the Securities Act claims set forth in: the preamble

paragraph; ¶¶ 1–2 (Nature of the Action); ¶¶ 3–6 (Jurisdiction and Venue); ¶¶ 7–17 and ¶¶ 19–22 (Parties); ¶¶ 23–29 (Class Action Allegations); ¶¶ 84–95 (Allegations Under the Securities Act); ¶¶ 96–106 (Count III); and ¶¶ 107–114 (Count IV). Plaintiff expressly disclaims all allegations above pertaining to the Exchange Act claims, including the allegations set forth in ¶¶ 30–83.

116. This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of the Securities Act Class, against each of the Securities Act Individual Defendants. This Count does not allege, and does not intend to allege, fraud or scienter, which are not elements of a Section 15 claim, and any implication of fraud or scienter is expressly disclaimed.

117. As detailed above, Blaize committed primary violations of the Securities Act by engaging in conduct in contravention of Sections 11 and 12(a)(2) of the Securities Act.

118. The Securities Act Individual Defendants each were control persons of Blaize by virtue of their positions as directors and/or senior officers of Blaize. The Securities Act Individual Defendants each had direct and/or indirect business and/or personal relationships with other directors and officers of Blaize and possessed the power to influence and control the contents of the Registration Statement and the Prospectus.

119. By reason of the conduct alleged herein, the Securities Act Individual Defendants violated Section 15 of the Securities Act, and Plaintiff and other members of the Securities Act Class have suffered harm as a result.

## **PRAYER FOR RELIEF**

120. WHEREFORE, Plaintiff, individually and on behalf of the Classes alleged above, prays for relief and judgment as follows:

a) Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Classes defined

herein;

b) Awarding Plaintiff and the other members of the Classes damages in an amount that may be proven at trial, together with interest thereon;

c) Awarding rescission or a rescissory measure of damages to Plaintiff and members of the Securities Act Class entitled thereto under the Securities Act;

d) Awarding Plaintiff and the members of the Classes pre-judgment and post-judgment interest, as well as their reasonable attorneys' and expert witness fees and other costs; and

e) Awarding such other relief as this Court deems appropriate.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury.

Respectfully submitted,

Dated: September 17, 2026

**JOHNSON FISTEL, PLLP**

By: */s/ Kristen O'Connor*
KRISTEN O'CONNOR

FRANK J. JOHNSON
501 West Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 363-8326
KristenO@johnsonfistel.com
FrankJ@johnsonfistel.com

**JOHNSON FISTEL, PLLP**
Scott M. Koren
(*pro hac vice* forthcoming)
620 Fifth Avenue, 2nd Floor
New York, NY 10020
Telephone: (212) 292-5690
Facsimile: (619) 363-8326
ScottK@johnsonfistel.com

**JOHNSON FISTEL, PLLP**
Michael I. Fistel, Jr.
(*pro hac vice* forthcoming)
40 Powder Springs Street
Marietta, GA 30064
Telephone: (470) 632-6000
Facsimile: (619) 363-8326
MichaelF@johnsonfistel.com

*Counsel for Plaintiff*